FILED
07 JUL 27 PM 3:39
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: POC  DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TINA HIGHLEN,<br><br>               Plaintiff,<br><br>v.<br><br>MIKE JOHANNS, Secretary, Department of Agriculture,<br><br>               Defendant. | CASE NO: 06-CV-0957 W (BLM)<br><br>**ORDER (1) GRANTING IN-PART AND DENYING IN-PART PLAINTIFF'S SUMMARY JUDGMENT MOTION**<br>**(2) GRANTING IN-PART AND DENYING IN-PART DEFENDANT'S SUMMARY JUDGMENT MOTION (3) AND REMANDING THE MATTER TO THE MSPB** |

    Plaintiff Tina Highlen is suing Defendant Mike Johanns, in his official capacity as Secretary of the United States Department of Agriculture (referred to herein as the "Forest Service"), for a Title VII claim of gender discrimination, retaliatory conduct, and for unlawful removal from employment in violation of 5 U.S.C. § 7702. Pending before the Court are cross-motions for summary judgment.

    The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d.1). For the reasons stated below, the Court **GRANTS IN-PART** and **DENIES IN-PART** each party's motion, and **REMANDS** the matter to the MSPB for further proceedings consistent with this Court's decision.

## I.   BACKGROUND

Highlen began working part-time for the Forest Service as a seasonal firefighter in July 1998. In June 2001, she converted into a full-time seasonal position, subject to a one-year probationary period. At around the same time, Highlen was injured on the job and placed on light duty for approximately one year. On May 7, 2002, Highlen completed her probationary period with the Forest Service. She worked at the Cleveland National Forest, Trabuco Ranger District as the fire engine operator.

On October 18, 2002, Highlen filed a formal Equal Employment Opportunity ("EEO") complaint alleging sex discrimination, and disability discrimination (shoulder tendinitis). After filing the complaint, Highlen agreed to mediate the dispute in the Forest Service's alternative dispute resolution program.

On May 15, 2003, the Forest Service sent Highlen a letter explaining the mediation process. (Admin. Rec., D1067–69.[1]) An excerpt from the letter states:

> If a settlement is reached, the mediator will ask the parties and their representatives, if present, to draft the terms of agreement that are acceptable to all parties and that could be signed at the session. It is expected that the individuals coming to the table have authority to enter into a settlement or access to such authority during the mediation. Please be advised that if a settlement is reached in the mediation, the agreement must go through a second review for technical approval.
>
> A settlement reached and approved is binding on all parties. If the matters that you raised in your EEO complaint are not resolved at the mediation, you will have the option of proceeding with the EEO process.

(Id., D1068)

The mediation took place on May 29, 2003. Highlen designated Lesa Donnelly as her non-attorney representative. Technical Representative Eugene Rose, among others, represented the Forest Service. Highlen selected the mediator.

At the conclusion of the mediation, the parties filled out a USDA Forest Service Pacific Southwest Region EIP Outcome Form, in which the parties stated that they

---

[1] The Administrative Record is attached to the Forest Service's Notice of Lodgment.

1  "mutually agree to resolve" the matter by, among other things, approving Highlen for
2  two-years of leave without pay ("LWOP") beginning on or about August 1, 2003.
3  (Admin. Rec., D1064.)  She desired two years LWOP in order to attend a two-year
4  Physician's Assistant program, which was set to begin in August or September.

5      After the mediation, on approximately July 2, 2003, Highlen filed another
6  informal EEO complaint for discriminatory conduct in the workplace.  (Pl.'s P&A, Ex.
7  V.)  In a declaration regarding the new claim, Highlen discussed her past EEO activity,
8  and explained that the May "mediation resulted in an Agreement in Principle that
9  Agency personnel are currently using to craft the final settlement."  (Admin. Rec.,
10  D1081.)  Then on July 16, Highlen's representative, Donnelly, sent Rose and others in
11  the Forest Service an e-mail referring to the agreement reached at the mediation as "an
12  agreement in principal", and stating that "we have heard nothing from HR on the
13  proposed settlement agreement...."  (Id., D1086.)

14      Meanwhile, Highlen was asked to sign a leave slip so she could begin her
15  LWOP, presumably while the settlement agreement was being prepared.  She filled out
16  the form, which authorized one year of LWOP to run from September 7, 2003 to
17  September 6, 2004.  (Admin. Rec., D1266.)  In a section for remarks on the slip,
18  Highlen wrote "This leave request does not void an agreement made on May 29,
19  2003."  (Id.)

20      On September 9, 2003, Rose sent a formalized settlement agreement to
21  Donnelly which incorporated the parties' May 23rd agreed-upon terms.  (Admin. Rec.,
22  D1261–64.)  Included in the agreement was a provision requiring Highlen to withdraw
23  "all EEO complaints filed to this date...."  (Id., D1262.)  Donnelly notified Rose that
24  Highlen did not want to withdraw the July 2003 informal complaint, and thus Highlen
25  objected to the provision.

26      On November 25, 2003, Rose sent Highlen a letter regarding Donnelly's
27  comments on the proposed settlement agreement.  (Admin. Rec., D1258–1259.)
28  Donnelly was copied on the letter.  (Id., D1259.)  With regard to the provision

requiring Highlen to withdraw all EEO complaints, Rose stated that the agency "is willing to consider any language that you or your representative would like to substitute or change so that we may finalize an agreement...." (Id., D1259.) Neither Highlen nor Donnelly responded to the letter. (Id.)

On March 14, 2004, Rose sent another letter to Highlen and Donnelly. (Admin. Rec., D1253–54.) The letter advised that the Forest Service was "making this last effort to resolve Ms. Highlen's concerns raised during the mediation" and confirmed the terms identified on the Outcome Form. (Id., D1253.) The letter reiterated that the Forest Service was willing to consider "any language that you would like to substitute or change", and Highlen was told that Forest Service's settlement offer was available until March 31, 2004. (Id.) Again, neither Highlen nor Donnelly responded.

On August 6, 2004, Highlen was notified that her leave of absence was due to expire and that she should report for duty on September 5, 2004. (Admin. Rec., D1251.) Highlen called Keith Fletcher, the district ranger, after receiving the letter. Fletcher informed Highlen that no one in management received her settlement agreement. Highlen told him that she had a two-year leave of absence. When Highlen did not report to work, Fletcher sent another letter on September 15, 2004. (Id., D1248.) The letter informed Highlen that she was absent without leave, and stated that "you must become available for work immediately or action will be initiated to remove you from your position and federal service." (Id.)

On September 30, 2004, Rose sent Highlen another letter with a copy of the settlement agreement, requesting that she execute and return the document within seven days from receipt. (Admin. Rec., D1242–46.) Highlen received the letter on October 12, 2004, but did not return the executed settlement agreement until November 18, 2004. (Id., D1230.)

By letter dated December 16, 2004, the Forest Service notified Highlen that because her response was untimely, the settlement offer had expired, and there was no settlement agreement in effect. (Admin. Rec., D1230.) Fletcher then mailed Highlen

another letter informing her about the proposed removal for being absent without leave, and for failing to request leave. (Id., D1223–27.)

In January 2005, Highlen sent a written response to Fletcher's removal letter, which primarily blamed Donnelly for the failure to finalize the settlement. (Admin. Rec., D1218.) On January 28, Tina Terrell, Forest Supervisor, sustained Highlen's removal effective February 8, 2005 for being absent without leave and failing to request leave. (Id., D1214–1216.) The letter stated that Highlen's "failure to be available for work and to follow procedures for requesting leave has adversely impacted our ability to accomplish our mission." (Id., D1214.)

On March 9, 2005, Highlen appealed her removal to the Merit Systems Protection Board ("MSPB"). Highlen's appeal raised two issues. First, she argued that the Outcome Form prepared at the conclusion of the mediation represented a binding agreement entitling Highlen to 2 years of LWOP, and thus she was not absent without leave. Second, Highlen argued that her removal was in retaliation for filing the July 2003 informal EEO complaint.

On March 3, 2006, the MSPB issued a decision in favor of the Forest Service and rejected Highlen's arguments. The MSPB found that the Outcome Form did not constitute a binding agreement, and that Highlen failed to prove that she was removed in retaliation for her EEO activities. Highlen then filed this lawsuit.

II.  **LEGAL STANDARD**

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a

material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. Id. at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)).

If the moving party meets its initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995) (citing Anderson, 477 U.S. at 252) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)).

"Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." Anderson, 477 U.S. at 255. Thus, when making its determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. Inferences, however, cannot be drawn out of "thin air"; instead, the proponent must adduce evidence of a factual predicate from which to draw inferences. American Int'l Group, Inc. v. American Int'l Bank, 926 F.2d 829, 836 (9th Cir. 1991).

## III. DISCUSSION

### A. Subject-Matter Jurisdiction.

The first issued raised by the Forest Service is whether the Court has subject-matter jurisdiction.

The MSPB has appellate jurisdiction over an "adverse employment action," such as removal, effecting a federal employee. Sloan v. West, 140 F.3d 1255, 1259 (9th Cir. 1998) (citing 5 U.S.C. § 7512(1)–(5); 5 C.F.R. § 1201.3 (1977)). The MSPB also has pendent jurisdiction over Title VII claims related to an adverse employment action. Id. This type of case, referred to as a "mixed case appeal", presents an employee with an option not usually available in pursuing a discrimination claim. Id.

Generally, a federal employee pursuing a Title VII claim must exhaust administrative remedies by filing a complaint with the Equal Employment Office of his or her agency. 29 C.F.R. 1614.105. Where the discrimination claim, however, is related to the adverse employment action, the employee may bypass the Equal Employment Office and appeal the agency's action directly to the MSPB. Sloan 140 F.3d at 1260 (citing 5 C.F.R. § 1201.154(a) (1997); 29 C.F.R. § 1614.302(b) (1997)). If the MSPB determines that it has jurisdiction over the claims, the case becomes a "mixed case appeal." The MSPB's decision may then be appealed to the appropriate district court. Id. at 1261.

The Forest Service argues that the Court lacks subject-matter jurisdiction because Highlen's retaliation claim is based on the alleged breach of the Outcome Form. According to the Forest Service, a claim for breach of an EEO settlement agreement must be filed with the EEO director. Because Highlen did not do so, she failed to exhaust administrative remedies. The Court disagrees.

Contrary to the Forest Service's contention, Highlen's retaliation claim is not based on the alleged breach of the Outcome Form. Rather, Highlen alleges that her removal was in retaliation for filing the July 2003 informal EEO complaint. Highlen cites as evidence an investigation of Highlen that the Forest Service began after she filed the July complaint, and the Forest Service's attempts to get her to dismiss the complaint by including the provision in the draft settlement agreement requiring Highlen to "withdraw all EEO complaints...." (Admin. Rec., D1262.) Because the retaliation claim is related to the adverse employment action, Highlen's MSPB proceeding involved a "mixed case appeal" and she, therefore, exhausted her administrative remedies. Sloan, 140 F.3d at 1259 ("[W]hen a federal employee claims he or she has been affected by both an 'adverse employment action' and a related Title VII violation, administrative remedies may be exhausted for Title VII purposes by asserting both claims before the MSPB.").

The Forest Service also appears to dispute that Highlen raised the retaliation issue in the MSPB proceeding. (See Def.'s P&A, 12:19 (The "MSPB hearing focused solely on [the] contractual issue.").) The Forest Service is wrong.

The Administrative Record establishes that on June 6, 2005, Highlen filed a motion to amend the appeal to include "the affirmative defense of discrimination based upon prior protected activity...." (Admin. Rec., D1527.) Based on that amendment, on October 14, 2005, the MSPB issued an Order and Summary of Prehearing Conference confirming that "appellant alleges that she was subject to unlawful reprisal for prior EEO activities when he [sic] was subject to the termination at issue." (Id., D1398.) Finally, the MSPB decision clearly dealt with the retaliation issue:

The appellant testified that she believed the termination was in retaliation for her EEO activities because the mediation had occurred on May 29, 2003, and she filed another complaint in July 2003 "where an employee [GS-5 or GS-6 coworker] was trying to get me fired."

(Pl.'s P&A, Ex. F at 56–58.)

Because Highlen's appeal to the MSPB was a "mixed case appeal," this Court has subject-matter jurisdiction to review the MSPB's decision.

### B.   Review of the MSPB's Decision.

The Forest Service removed Highlen for (1) being absent without leave and (2) failing to request leave. Highlen argued in the MSPB appeal that the removal was unlawful because the Outcome Form was a binding agreement, which provided her 2 years of LWOP, and thus she was not absent without leave and was not required to request leave. The MSPB rejected Highlen's argument because it found that the Outcome Form was not binding. The MSPB also found that Highlen failed to establish that she was removed in retaliation for her EEO activities.

The Court reviews the MSPB's determination of the non-discrimination claim under a deferential statutory standard. Sloan, 140 F.3d at 1260 (citing Washington v. Garrett, 10 F.3d 1421, 1428 (9th Cir. 1993)). The Court reviews the MSPB's decision regarding the retaliation claim de novo. Id.

#### 1.   The non-discrimination claim.

Under the deferential standard applicable to non-discrimination claims, the MSPB's decision is not to be set aside unless it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c). In reviewing the MSPB's decision, courts ensure that the correct legal standards were applied, and review the administrative record to ascertain whether the findings are supported by substantial evidence.

Washington, 10 F.3d at 1428. Substantial evidence means "more than a mere scintilla, but less than a preponderance." Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990).

Highlen argues that "if a writing appears to be plain and unambiguous on its face, its meaning must be determined from the four corners of the instrument **without regard to extrinsic evidence of any nature**." (Pl.'s P&A, 11:24–12:2.) Because the MSPB relied on extrinsic evidence in finding that the Outcome Form was not binding, Highlen contends that the decision is not in accordance with the law and must be set aside. The Court agrees.

"Whether a writing constitutes a final agreement or merely an agreement to make an agreement depends primarily upon the intention of the parties. In the absence of ambiguity this must be determined by a construction of the instrument taken as a whole." Rennick v. O.P.T.I.O.N. Care, Inc., 77 F.3d 309, 315 (9th Cir. 1996) (citing Smissaert v. Chiodo, 163 Cal.App.2d 827, 830 (1958)). Under this standard, the MSPB was required to first determine if the Outcome Form was ambiguous. If not ambiguous, then the Outcome Form constitutes a binding agreement.

Having reviewed the MSPB's decision, it is clear that the MSPB failed to evaluate whether the Outcome Form was ambiguous. Instead, the MSPB only appears to have considered extrinsic evidence in evaluating the parties' intent, and ignored the Outcome Form. (Pl.'s P&A, Ex. F at 48–53.)

Because the MSPB failed to evaluate whether the Outcome Form was ambiguous, the Court does not reach whether the decision is supported by substantial evidence. Instead, the MSPB's decision is vacated, and the MSPB is instructed to evaluate whether the Outcome Form constitutes a binding agreement in accordance with the correct legal standard.

### 2. The retaliation claim.

On summary judgment, the plaintiff bears the initial burden of establishing a prima facie case for retaliation under Title VII. Yartzoff v. Thomas, 809 F.2d 1371, 1375 (9th Cir. 1987) ("The *McDonnell Douglas* order and allocation of proof that governs

disparate treatment claims also governs retaliation claims."); see McDonnell Douglass Corp. v. Green, 411 U.S. 792, 802–03 (1973). Thereafter, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000). If the employer carries its burden, the plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Id., at 928.

### a.  *Highlen established a prima facie case.*

To establish a prima facie case, Highlen must show (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two. Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1065 (9th Cir. 2003). The degree of proof required to establish a prima facie case on summary judgment is "minimal and does not even need to rise to the level of a preponderance of the evidence." Wallis v. J.R. Simplot, 26 F.3d 885, 889 (9th Cir. 1994) (citing Yartzoff, 809 F.2d at 1375). Rather, the plaintiff "need only offer evidence which 'gives rise to an inference of unlawful discrimination.'" Id. (citing Lowe v. City of Monrovia, 775 F.2d 998, 1005 (9th Cir. 1985)). Accordingly, the amount of evidence that must be produced to create a prima facie case is "very little." Id. (citing Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1111 (9th Cir. 1991).

There is no dispute that Highlen satisfied the first two elements. By filing the July 2003 EEO complaint, Highlen engaged in a protected activity under Title VII. See 42 U.S.C. § 2000e-3(a); Brooks, 229 F.3d at 928. And Highlen's removal constitutes an adverse employment action. See 5 U.S.C. § 7512.

As for a causal link, Highlen relies on the following three facts to establish this element: (1) in August 2003, after she filed the EEO complaint, the Forest Service began an employee misconduct investigation of Highlen (Admin. Rec., D2351–54); (2) in September 2003, the Forest Service sent Highlen a "newly drafted" settlement agreement that required her to withdraw the July 2003 informal EEO complaint (Id., D1262); and (3) Highlen was removed after she refused to sign the "newly drafted"

1  settlement agreement (Pl.'s P&A, Ex. U at 105). In addition to these facts, the Court
2  notes that there is no dispute that the Forest Service employees who sent her the
3  "newly drafted" settlement agreement, and were involved in her removal were aware of
4  the July complaint. (See Admin. Rec., D1086, D1218, D2369, D2378.)

5  In Vasquez v. County of Los Angeles, 349 F.3d 634 (9th Cir. 2003), plaintiff
6  filed a grievance in February 1998 against a co-worker for racial comments. From
7  March 1998 until March 1999, the plaintiff and co-worker continued to experience
8  conflicts. Then in April 1999, plaintiff was transferred to another position. Plaintiff
9  eventually filed a lawsuit alleging that his transfer was in retaliation for filing the
10 February 1998 grievance. The Ninth Circuit held that because the protected activity –
11 i.e., filing the grievance – occurred 13 months prior to the adverse action – i.e., the
12 transfer – plaintiff failed to establish a causal link. Id. at 646.

13 Similar to Vasquez, Highlen's protected activity – filing the EEO complaint –
14 occurred 17 months before her removal. Highlen, however, attempts to bridge the
15 17-month gap by arguing that her refusal to sign the settlement – and presumably,
16 refusal to dismiss the complaint – was part of the protected activity. In light of the
17 minimal standard applicable at this stage of the analysis, the Court finds that this
18 evidence is sufficient to satisfy the causal link element. See Yartzoff, 809 F.2d at 1376
19 ("Causation sufficient to establish the third element of the prima facie case may be
20 inferred from circumstantial evidence...."). Accordingly, Highlen has established a
21 prima facie case of retaliation.

22

23              **b.      *The Forest Service established a legitimate non-retaliatory***
24                       ***reason for its conduct.***

25 Because Highlen established a prima-facie case, the burden shifts to the Forest
26 Service to present evidence of a legitimate, non-discriminatory reason for her removal.
27 See Brooks, 229 F.3d at 928. However, at this stage of the analysis, only the burden of
28 production shifts; the ultimate burden of persuasion remains with Highlen. Yartzoff,
   809 F.2d at 1376 (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253).

Thus, the Forest Service need only produce admissible evidence that would allow the trier of fact to rationally conclude that Highlen's removal was not the result of discriminatory animus. See id.

The Forest Service has met its burden of articulating legitimate, non-retaliatory reasons for its conduct. The Forest Service contends that Highlen was removed because she was AWOL and failed to request leave, and cites the following undisputed facts in support: (1) Highlen signed a leave slip providing her 1-year of LWOP from September 7, 2003 to September 6, 2004 (Admin. Rec., D1266); (2) in August 2004, Highlen was notified that her 1-year LWOP was about to expire and that she needed to report to work (Id., D1251); (3) as of September 2004, Highlen had not executed the draft settlement agreement providing her 2 years of LWOP (Id., D1231, 1242); (4) in September 2004, Highlen was notified that she was AWOL and needed to report to work or face removal (Id., D1248); and (5) as of February 2005, when the Forest Service decided to remove Highlen, she had not reported to work (Id., D1214). Based on these facts, the Court finds that the Forest Service clearly established a legitimate, non-retaliatory reason for Highlen's removal.

With respect to the investigation of Highlen, the Forest Service contends that the investigation was required because another employee made a claim against her. The undisputed evidence confirms that on July 2, 2003, another employee filed a complaint against Highlen. (Admin. Rec., D2376.) The Forest Service was, therefore, obligated to conduct an investigation of Highlen. 29 C.F.R. § 1614.108.

        *c.*    *Highlen failed to demonstrate a genuine issue of material fact regarding pretext.*

Because the Forest Service articulated a legitimate, non-retaliatory reason for Highlen's removal, the burden shifts to her to demonstrate a genuine issue of material fact as to whether the reason advanced by the Forest Service was a pretext. Yartzoff, 809 F.2d at 1377. She may satisfy this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by

showing that the employer's proffered explanation is unworthy of credence." Id. (quoting Burdine, 450 U.S. at 256). The evidence presented must be sufficient to raise a reasonable inference that the Forest Service's proffered explanations may have been pretextual. Id. at 1378. Highlen has failed to carry this burden.

Highlen first challenges the credibility of the Forest Service's contention that she was removed because her failure to report back to work created a hardship. According to Highlen,

> [Defendant's] argument fails in light of the fact that Defendant continued to offer Plaintiff LWOP in October of 2004, if she would only sign their Settlement Agreement" [sic] (Pl. Mot, @ Exhs. M,N], dropping her EEO Complaint. Thus, Plaintiff's absence from work was not a hardship on Defendant, her pursuit of her EEO Complaint apparently was the hardship. The questions raised by Defendant's conduct is why didn't the Defendant simply order Plaintiff back to work if she were sorely needed, instead of repeatedly asking her to sign the newly drafted settlement agreement. The obvious answer is that Plaintiff was not sorely needed at work if she would sign the Settlement Agreement dismissing her July 2003 complaint.

(Pl.'s Reply, 7:11–22.) Highlen's argument is neither persuasive nor supported by the evidence.

Highlen's assertion that the Forest Service failed to order her back is contradicted by the evidence. On August 6, 2004, the Forest Service notified Highlen that her leave of absence was due to expire and she was required to report for duty on September 5, 2004. (Admin. Rec., D1673–74, D1251.) On September 15, 2004, the Forest Service sent Highlen another letter advising her that she was AWOL and to report to duty immediately or "action will be initiated to remove you...." (Id., D1674, D1248–49.) Thus, there is no dispute that Highlen was ordered back to work.

With respect to whether Highlen's absence created a hardship, the only evidence bearing on the issue was the uncontroverted testimony of a Forest Service employee who confirmed that Highlen's vacant position (assistant fire engine operator) created a hardship for the fire crew because it was "a scramble to make sure there were sufficient drivers available...." (Admin. Rec., D1676.) This testimony was bolstered by evidence that the fire season in Highlen's former territory covers most of the year and seventy

1  percent of personnel are engaged in fire duties.  (<u>Id.</u>, D1698.)  Additionally, there is no
2  dispute that Highlen ignored the Forest Service's order that she report back to duty
3  upon expiration of her 1 year LWOP, and she failed to request another year of LWOP.
4  (<u>Id.</u>, D1214–16, D1248–49, D1673–74.)  This evidence supports the Forest Service's
5  contention that Highlen's absence created a hardship, and that she was removed for
6  being AWOL and failing to request additional LWOP.

7        Highlen next attempts to establish pretext by asserting that she was removed for
8  refusing to execute the settlement agreement with the provision requiring her to
9  dismiss the July 2003 EEO complaint.  (Pl.'s Reply, 7:5–10.)  While there is no dispute
10  that the draft settlement agreement included a provision requiring Highlen to dismiss
11  her July complaint, the evidence supports the Forest Service's contention that the
12  provision was boilerplate used by the Forest Service.  (<u>See</u> Def.'s P&A, 17:21–22; Pl.'s
13  Ex. J at 68.)  It is also undisputed that the Forest Service twice requested that Highlen
14  or Donnelly suggest new language for the problematic provision.  (Admin. Rec.,
15  D1258–59, D1253–54.)  Neither Highlen nor Donnelly responded to either request.
16  Moreover, there is no dispute that Highlen executed the settlement agreement that was
17  sent to her on September 30, 2007, and thus ultimately agreed to withdraw the July
18  2003 informal EEO complaint.  (Pl.'s Reply, 4:9–11.)  Despite her agreement, the
19  Forest Service removed Highlen.  Accordingly, the evidence does not support
20  Highlen's theory that she was terminated for refusing to sign the settlement agreement
21  and dismiss her July complaint.

22        Highlen also argues that pretext may be inferred from the fact that different
23  language was used in an outcome form prepared during another employee's mediation.
24  (Pl.'s Reply, 8:2–3.)  The outcome form from the other employee's mediation stated
25  that the "parties mutually agree to *consider* resolving this matter" (Pl.'s P&A, Ex. I,
26  emphasis added) as opposed to Highlen's Outcome Form, which stated "parties
27  mutually agree to resolve this matter" (<u>Id.</u>, Ex. B).  While there is no dispute that the
28  language differed, Highlen fails to explain and the Court fails to see a connection
   between the use of the different language and pretext.  More importantly, there is no

| | |
|---|---|
| 1 | dispute that both outcome forms were prepared *before* Highlen filed the July 2003 EEO |
| 2 | complaint. (Id., Exs. B, I.) The documents, therefore, cannot support an inference of |
| 3 | retaliation because the protected activity had not yet occurred. |
| 4 |       Highlen's final argument is that pretext may be inferred from the Forest |
| 5 | Service's allegedly more favorable treatment of an AWOL male employee. (Pl.'s Reply, |
| 6 | 8:3–7.) The male employee received a promotion offer, but subsequently left for |
| 7 | almost two months. (Pl.'s Reply, Ex. 1 at 16–17.) The Forest Service could not |
| 8 | contact him for about 30 days, and thus he was considered AWOL during that time. |
| 9 | (Id.) After contact was made with the employee, he was placed on LWOP for 30 days. |
| 10 | (Id.) Although he was ultimately allowed to return to work, the Forest Service |
| 11 | rescinded his promotion. (Id.) |
| 12 |       While the Forest Service's more favorable treatment of another similarly situated |
| 13 | employee could support an inference of pretext, there are substantial and material |
| 14 | differences between Highlen's and the male employee's situation. While the male |
| 15 | employee was AWOL for 30 days, Highlen was AWOL for five months – |
| 16 | approximately 150 days – when she was removed. (Admin. Rec., D1248, D1214–16.) |
| 17 | Additionally, not only was Highlen AWOL for a significantly longer period of time, but |
| 18 | there is no evidence that she intended to return to work before her Physician's |
| 19 | Assistant program was over. Additionally, while the male employee could not be |
| 20 | contacted for about 30 days, Highlen and her representative ignored the Forest |
| 21 | Service's communications from November 2003 until August 2004, nearly ten months. |
| 22 | (Id., D1258–59, D1253–54.) In fact, the only similarity between the male employee |
| 23 | and Highlen, was that approximately 30 days after being AWOL, Highlen was given |
| 24 | another opportunity to sign the draft settlement agreement, thereby retaining her |
| 25 | position and LWOP status. (Id., D1242–46.) Thus, the Forest Service's treatment of |
| 26 | the male employee does not support Highlen's claim of pretext. |
| 27 |       While Highlen raises many arguments in an attempt to establish pretext, the |
| 28 | arguments are either not supported or contradicted by the evidence. "A plaintiff's belief that a defendant acted from unlawful motive, without evidence supporting that |

belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1028 (9th Cir. 1988). Therefore, having failed to raise a genuine issue of material fact demonstrating that the Forest Service's articulated reasons for the removal are directly or indirectly pretextual, Highlen's retaliation claim must be dismissed.

### 3. The gender-discrimination claim.

The Forest Service also seeks summary judgment of Highlen's gender-discrimination claim. To establish a prima facie case of gender discrimination, Highlen must show: (1) she belongs to a protected class; (2) she was meeting the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) other employees with qualifications similar to her own were treated more favorably. <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1220 (9th Cir. 1998).

Highlen clearly satisfies the first and third elements. However, Highlen failed to produce evidence establishing that she was meeting the Forest Service's legitimate expectations when she was removed. Instead, the only evidence before the Court demonstrates that at the time of her removal, Highlen was AWOL for five months and had failed to request leave. This evidence, therefore, supports the inference that Highlen was not meeting the Forest Service's legitimate expectations.

Highlen also fails to identify evidence that the Forest Service treated other employees with qualifications similar to her own more favorably. Highlen appears to attempt to satisfy this element by arguing that the Forest Service treated the male employee who was AWOL for 30 days more favorably. (Pl.'s Reply, 8:12–18.) As explained above, however, Highlen's case is substantially and materially different than the male employee's situation. While the male employee was AWOL for 30 days, Highlen was AWOL for approximately 150 days (Admin. Rec., D1248, D1214–16), and there is no evidence that Highlen intended to return to her job before the Physician's Assistant program ended. Moreover, because Highlen was given another

opportunity to sign the settlement agreement (and thereby retain her position) after being AWOL for approximately 30 days, the evidence does not support an inference that the Forest Service treated the male employee more favorably. (Id., D1242–46.)

Finally, Highlen also asserts that the Forest Service's investigation of her in approximately July 2003 supports the gender-discrimination claim. Again, as discussed above, the evidence confirms that on July 2, 2003, another employee filed a complaint against Highlen. (Admin. Rec., D2376.) The Forest Service was, therefore, obligated to conduct an investigation of Highlen. 29 C.F.R. § 1614.108. Accordingly, the investigation does not support an inference of gender discrimination.[2]

## IV. CONCLUSION AND ORDER

For the reasons discussed above, the Court rules as follows:

1. Highlen's summary-judgment motion is **DENIED** with respect to her Title VII claim for retaliation, and **GRANTED** with respect to the MSPB's decision on the adverse employment action.

2. The Forest Service's summary-judgment motion is **GRANTED** with respect to the Title VII claim for retaliation and gender discrimination, and **DENIED** with respect to the MSPB's decision on the adverse employment action.

//
//
//

---

[2] The parties do not specifically address whether Highlen exhausted administrative remedies with respect to the gender-discrimination claim. In her Reply, Highlen states that she raised the claim in the MSPB appeal (see Pl.'s Reply, 8:10–11), but she fails to cite evidence supporting this contention. Additionally, there is no mention of the claim in Highlen's original MSPB appeal, the motion to amend the appeal or the MSPB's decision. If Highlen failed to raise the gender-discrimination claim in her MSPB appeal, she may have also failed to exhaust administrative remedies on that claim. See B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1099–1100 (9th Cir. 2000).

In light of the foregoing, the MSPB's decision regarding the adverse-employment action is **VACATED**, and the matter **REMANDED** to the MSPB for further proceedings consistent with this opinion. The Clerk shall close the District Court file.

**IT IS SO ORDERED.**

DATE: July 27, 2007

HON. THOMAS J. WHELAN
United States District Court
Southern District of California